**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Michael E. Brown, Jr., | ) | CASE NO. 5:13CV2842 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| Michele Miller, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Michael E. Brown, Jr. ("Brown"), challenges the constitutionality of his conviction in the case of *State v. Brown*, Summit County Court of Common Pleas Case No. CR-11-03-0741. Brown, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on December 30, 2013. On March 20, 2014, Warden Michele Miller ("Respondent") filed her Return of Writ. (Doc. No. 7.) Brown filed a Traverse on April 17, 2014. (Doc. No. 13.) For reasons set forth in detail below, it is recommended that Brown's Petition be DISMISSED as procedurally defaulted.

**I.  Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Brown's conviction as follows:

Based upon events that took place on March 19, 2011, Mr. Brown was indicted on one count of retaliation in violation of R .C. 2921.05(A), a third-degree felony, one count of resisting arrest in violation of R.C. 2921.33(A), a second-degree misdemeanor, one count of disorderly conduct in violation of R.C. 2917.11(A)(1), a fourth-degree misdemeanor, and one count of aggravated menacing in violation of R.C. 2903.21, a first-degree misdemeanor.  The case proceeded to a jury trial after which the jury found Mr. Brown guilty of all counts.  Mr. Brown was sentenced to an aggregate term of two years in prison.

\* \* \*

{¶ 6} All the charges at issue stem from events that took place on March 19, 2011, and center around Mr. Brown and his interactions with Officer Howard Vaughn of the Akron Police Department.  Officer Vaughn and Mr. Brown were acquainted with each other from high school, but the two men did not have any difficulties with each other until February 2000.

{¶ 7} Officer Vaughn testified at trial and discussed his various interactions with Mr. Brown.  On February 19, 2000, after Officer Vaughn had finished his shift, he received a phone call from Geeya Gibson, who was a friend of his best friend's wife and was also the mother of Mr. Brown's son.  Ms. Gibson was concerned that someone had broken into her car and knew Officer Vaughn was a police officer.  Officer Vaughn went over to investigate.  While he was doing so, Ms. Gibson saw Mr. Brown's vehicle and became afraid.  She told Officer Vaughn to go inside her house because she did not know what Mr. Brown would do if he saw Officer Vaughn.  Mr. Brown came to the door and began yelling at Ms. Gibson, telling her to have her visitor come outside. Mr. Brown also threatened to shoot Officer Vaughn's truck.  Officer Vaughn decided to call dispatch to report the situation.  After a few minutes, Officer Vaughn went to the door and asked Mr. Brown what the problem was.  Realizing that Ms. Gibson's visitor was Officer Vaughn, Mr. Brown expressed his dislike for him.  Mr. Brown then walked to his vehicle and pulled out a gun.  Officer Vaughn proceeded to pull out his gun and identified himself as a police officer; however, Mr. Brown got into his car.  At the time, Ms. Gibson's young son was begging Officer Vaughn not to shoot his father.  As Mr. Brown was driving away, he told Officer Vaughn that they could settle the argument later at a local school.

{¶ 8} As a result of that incident, Mr. Brown was charged and an arrest warrant was issued. Sometime later, Officer Vaughn and his partner went to Mr. Brown's home to effectuate the warrant.  They placed Mr. Brown in handcuffs, but, after running a computer search, realized that Mr. Brown had turned himself in earlier that morning.  Accordingly, they released Mr. Brown.

{¶ 9} Officer Vaughn next encountered Mr. Brown on June 18, 2006.  Officer

-2-

Vaughn was stopped at a light on his way home from church when Mr. Brown's vehicle pulled up next to his.  Mr. Brown was laughing and told Officer Vaughn that he was still "going to kick [Officer Vaughn's] a* *."  Officer Vaughn then drove away after making a comment to Mr. Brown.

{¶ 10} On August 4, 2007, Officer Vaughn and another officer were in uniform working an off-duty job at a liquor store.  Officer Vaughn was standing in front of the store keeping an eye on the parking lot when Mr. Brown walked into the store and swore at Officer Vaughn.  When Mr. Brown left the store, he again threatened Officer Vaughn with physical harm.  Because Mr. Brown was blocking the entrance to the store and being disorderly, Officer Vaughn told Mr. Brown that he had to leave.  Mr. Brown seemed unconcerned and continued through the parking lot cursing at Officer Vaughn.  As Mr. Brown got in his vehicle, he told Officer Vaughn that Mr. Brown was "going to destroy [him]."  The other officer who was present testified similarly; however, he did not report that Mr. Brown threatened Officer Vaughn.  At that point, Officer Vaughn arrested Mr. Brown, and he was later charged and tried in Akron Municipal Court by Judge Williams.

{¶ 11} Officer Vaughn again encountered Mr. Brown in March 2011.  Events from that day led to the charges at issue in the instant matter. Officer Vaughn had gone to Acme to drop off some pants to be altered.  Officer Vaughn happened to park next to Mr. Brown's vehicle in the Acme parking lot.  As Officer Vaughn walked in front of Mr. Brown's vehicle, Mr. Brown began swearing at Officer Vaughn.  Officer Vaughn told Mr. Brown that he was praying for him and walked away. Mr. Brown followed Officer Vaughn and continued to yell at him. Mr. Brown told Officer Vaughn that he was "going to spray [Officer Vaughn's] house with bullets."  Officer Vaughn asked if Mr. Brown was threatening him, and Mr. Brown indicated he was. Mr. Brown added that there was nothing that Judge Williams could do about it and walked away into the store.  Officer Vaughn walked in behind Mr. Brown and proceeded to call the police.  Officer Vaughn testified that he has been afraid that Mr. Brown will carry out his threats against his family and has taken various measures in attempts to ensure his family's safety.  Because Mr. Brown confronted Officer Vaughn with a gun on a prior occasion and because Mr. Brown knows where Officer Vaughn lives, Officer Vaughn took Mr. Brown's threats seriously.  Police officers eventually arrived at the scene, but Mr. Brown had already left.  Charges were filed against Mr. Brown, but Officer Vaughn did not participate in the arrest because he did not want to further aggravate the situation with Mr. Brown.

{¶ 12} Nevin Webb, an officer with the Akron Police Department, also testified at trial.  He responded to the Acme parking lot following the incident with Officer Vaughn and Mr. Brown.  When he arrived, Mr. Brown was already gone,

so he and other officers proceeded to try to locate Mr. Brown pursuant a felony arrest warrant issued against him. Ultimately, Officer Webb responded to 1119 Garman. Officer Webb knocked on the door, but there was no response. When he noticed a person inside the residence peering out a window, he called for backup. Eventually, the person came outside, shut the door, and identified himself as Mr. Brown. Officer Webb asked Mr. Brown to tell him what happened at the Acme, but Mr. Brown became more agitated and began using expletives and made threats against the police, in general, and against Officer Vaughn specifically. At that point, Officer Webb told Mr. Brown that he was under arrest. Mr. Brown became more angry and told Officer Webb that he had to go back into the house for something. Mr. Brown then turned to open the door and go back inside. Officer Webb was afraid that Mr. Brown was about to barricade himself inside, and, therefore, grabbed Mr. Brown's wrist and pulled him into the yard. Mr. Brown lost his balance and, when he got up, he was even more upset; he began clenching his fists and "blad[ed]" his body "like he was ready to fight." Mr. Brown continued throughout the arrest to yell expletives and at one point yelled that he was not going to be arrested. During this time, Officer Webb repeatedly told Mr. Brown to get on the ground and that he was under arrest. When Officer Webb saw an opportunity, he tackled Mr. Brown, and, at that time, Officer Harrison arrived and assisted with handcuffing Mr. Brown. Officer Webb denied hitting or kicking Mr. Brown.

{¶ 13} Officer Joel Harrison testified that, when he arrived on the scene at 1119 Garman, he observed Officer Webb and Mr. Brown standing in the yard facing each other. Officer Harrison heard Officer Webb tell Mr. Brown to get on the ground and saw Mr. Brown take "a fighting stance[.]" Within seconds, Officer Webb tackled Mr. Brown, and Officer Harrison proceeded to assist Officer Webb in arresting him. Mr. Brown continued to struggle to avoid being handcuffed despite being told to stop resisting. Ultimately, the two officers were able to handcuff Mr. Brown and place him in the cruiser. A sergeant of the Akron Police Department who investigated the officers' use of force recommended that it be found reasonable. The sergeant interviewed several people including Mr. Brown, his wife, and a witness and concluded that the officers did not hit or kick Mr. Brown.

{¶ 14} Mr. Brown disputed Officer Vaughn's and Officer Webb's version of events and presented witnesses in support of his position. With respect to the 2000 incident, Ms. Gibson testified that Officer Vaughn came over her house to visit but denied that she called him over to investigate a break-in involving her car. She indicated that Mr. Brown then came over and began knocking at the door, but she did not answer hoping he would leave. Ms. Gibson denied that her son was present. Mr. Brown testified that he had come over to retrieve something from Ms. Gibson's house but no one answered the door. It was only as he was leaving that Officer Vaughn came outside, made a statement to Mr. Brown, and

-4-

started jumping around, yelling, and waving his gun in the air.  Ms. Gibson confirmed that she overheard Mr. Brown and Officer Vaughn arguing.  Mr. Brown testified that he then got in his car and left while Officer Vaughn was in the street screaming.  Mr. Brown called Ms. Gibson to talk to her about what happened, but Officer Vaughn grabbed the phone.  Mr. Brown told Officer Vaughn that they could settle the dispute in a schoolyard.  Mr. Brown also indicated that, when Officer Vaughn came to arrest him regarding this incident, Officer Vaughn put a gun to his head and ordered him to the ground.

{¶ 15} With respect to the 2007 encounter, Mr. Brown maintains that he walked in and out of the liquor store without speaking to Officer Vaughn and that it was Officer Vaughn that followed Mr. Brown to his vehicle.  Mr. Brown told Officer Vaughn he was going to call his lawyer, and Officer Vaughn told Mr. Brown he was being disorderly.  Mr. Brown was then arrested and charged.  Mr. Brown testified to his attempts to try to clear himself of those charges even after being convicted.  These efforts included writing letters to the disciplinary committee, the mayor's office, various judges, and newspapers.

{¶ 16} Mr. Brown also discussed the 2011 incident at Acme.  Mr. Brown testified that he was going to Acme to buy coffee cleaner and was sitting in his car smoking when Officer Vaughn pulled up next to him.  According to Mr. Brown, Officer Vaughn walked up to Mr. Brown's vehicle, stopped, beat his chest, kissed his fingers, pointed to the sky, and told Mr. Brown he was praying for him.  Mr. Brown took that as a threat in response to Mr. Brown's actions to clear his name from the 2007 convictions.  Mr. Brown got out of the car and swore and told Officer Vaughn that he should be praying for himself.  As they were walking in the store, Mr. Brown told Officer Vaughn that he was going to sue him.  Mr. Brown denied mentioning Judge Williams and denied threatening Officer Vaughn.  Mr. Brown bought the coffee cleaner and went back home.  Upon arriving home, Mr. Brown told his wife about running into Officer Vaughn in the parking lot.  Mr. Brown's wife indicated that this made her concerned given the prior incidents between Mr. Brown and Officer Vaughn.

{¶ 17} A while later, Mr. Brown heard knocking at the door.  When he answered it there was an officer standing there who began asking Mr. Brown about the Acme incident.  After a brief conversation, the officer indicated Mr. Brown was under arrest. Mr. Brown told the officer he wanted to tell his wife and turned towards the door to do so and at that point was tackled by the officer.  Mr. Brown asserted that the officer then started hitting him. Mr. Brown proceeded to get up, and the officer lost his balance.  Mr. Brown indicated that he then put his hands up because the officer appeared to be reaching for a weapon, but the officer charged him anyway and tackled him.  While the officer repeatedly told Mr. Brown to stop resisting, Mr. Brown kept insisting that he was not resisting.  At that point another officer arrived and also jumped on top of Mr. Brown.

Ultimately, Mr. Brown was handcuffed and placed in a cruiser.  Mr. Brown's wife testified that, during the arrest, Mr. Brown kept saying that he was not resisting and stated that she never saw Mr. Brown taking a fighting stance. While he was in a cruiser, Officer Jeffrey Ludle came over to Mr. Brown. Officer Ludle told Mr. Brown that he and Officer Vaughn should settle their differences in a fight and also told Mr. Brown that, if he did not stop behaving as he was, Officer Vaughn would end up shooting him someday.  Officer Ludle also expressed a similar sentiment to Mr. Brown's wife.

*State v. Brown*, 2013 WL 6123160 at * 1-4 (Ohio App. 9th Dist. Nov. 20, 2013).

## II.  Procedural History

### A.    Conviction

In April 2011, a Summit County Grand Jury charged Brown with one count of retaliation in violation of Ohio Revised Code ("O.R.C.") § 2921.05(A) (Count One); one count of resisting arrest in violation of O.R.C. § 2921.33(A) (Count Two); one count of disorderly conduct in violation of O.R.C. § 2917.11(A)(1) (Count Three); and, one count of aggravated menacing in violation of O.R.C. § 2903.21 (Count Four).  (Doc. No. 7-3.)  On April 3, 2012, a jury found Brown guilty as charged.  (Doc. No. 7-4.)

On May 17, 2012, the trial court sentenced Brown to a definite term of twenty-four (24) months incarceration on Count One; ninety (90) days on Count Two; thirty (30) days on Count Three; and, one hundred eighty (180) days on Count Four.  (Doc. No. 7-5.)  The sentences were to be served concurrently.  *Id.*  In addition, the trial court ordered that Brown "**may** be supervised on post-release control by the Adult Parole Authority for a **discretionary** period of **up to 3 years** after being released from prison, as determined by the Adult Parole Authority."  (Doc. No. 7-5 at 2) (emphasis in original).

### B.    Direct Appeal

On June 14, 2012, Brown, through counsel, timely appealed to the Court of Appeals for

the Ninth Appellate District ("state appellate court"), raising the following assignments of error:

I.    APPELLANT MICHAEL E. BROWN'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.    THE TRIAL COURT ERRED BY FAILING TO CONDUCT A SIMILAR IMPORT ANALYSIS BEFORE SENTENCING BROWN ON ALL COUNTS.

(Doc. Nos. 7-14, 7-16.)

On November 20, 2013, the state appellate court affirmed Brown's convictions, but remanded the matter for consideration of whether any of Brown's convictions merged for purposes of sentencing. *State v. Brown*, 2013 WL 6123160 at * 7 (Ohio App. 9th Dist. Nov. 20, 2013). *See also* Doc. No. 7-1. Brown did not appeal this judgment.

**C.    Post-Judgment Motions**

Meanwhile, on December 10, 2012, Brown filed a *pro se* Petition to Vacate or Set Aside Sentence pursuant to O.R.C. § 2953.21. (Doc. No. 7-20.) Therein, he raised the following grounds for relief:

I.    PROSECUTORIAL MISCONDUCT.

SUPPORTING FACTS: (Hidden fraud) Fraudulent concealment of Evidence favorable to the defense. Two videos altered while in possession or control of the State. The State failed to enforce three timely filed subpoenas. State allowed used testimony that it knew or should have known was false. State prosecutor failed to learn/disclose evidence favorable to the defense. State prosecutor excluded evidence by the hearsay rule when declarant was available to testify.

II.    INEFFECTIVE ASSISTANCE OF COUNSEL (Amendment V, VI, XIV).

SUPPORTING FACTS: Defense counsel was actively representing conflicting interest and the conflict had a direct adverse effect on specific instances of counsel's performance. Defense counsel was an actor in a conspiracy to fraudulently conceal material evidence favorable to the defense. Defense counsel refused to subpoena expert witness to trial or

-7-

contact expert witness in regards to expert findings.  Defense counsel lead State Prosecutor to object to recorded testimony of defense witness. Defense counsel failed to introduce previous given statements by leading state witness that was contrary to statements given at trial.

III.   FIFTH AMENDMENT, SIXTH AMENDMENT, AND FOURTEENTH AMENDMENT OF UNITED STATES CONSTITUTION WAS VIOLATED DURING PETITIONER CRIMINAL PROCEDURE.

SUPPORTING FACTS: Three unenforced subpoena(s) request(s) that was/is in control or possession of the State of Ohio or City of Akron. Ineffective assistance of counsel.  Tampering with evidence while in possession of the State of Ohio. Prosecutorial Misconduct. State violated clearly established federal law precedent *Brady v. Maryland* (1963).  The State of Ohio violated 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986.

(Doc. No. 7-20.)

On February 15, 2013, the trial court denied Brown's *pro se* Petition on the merits.  (Doc. No. 7-22.)  Brown did not appeal this ruling.

On July 8, 2013, Brown filed two *pro se* Motions for Relief from Judgment or Order pursuant to Ohio Rule of Civil Procedure 60(b).[1]  (Doc. Nos. 7-2 at 1; 7-23.)  On September 26, 2013, the trial court denied Brown's Motions for Relief from Judgment, finding them to be "an untimely/successive petition for postconviction relief, subject to the doctrine of *res judicata*." (Doc. No. 7-26.)

On October 8, 2013, Brown filed a *pro se* Notice of Appeal from the trial court's September 26, 2013 Order.  (Doc. No. 7-27.)  This Notice of Appeal appears on the trial court docket; however, that docket does not reflect any further proceedings with respect thereto.  (Doc.

---

[1]  Brown also filed a number of other *pro se* motions in the trial court, including a Motion for Judicial Release; Motion for Change of Venue; Motion for Court Order; and, Motion to Enforce Order.  (Doc. Nos. 7-2, 7-26.)  All of these motions were denied. (Doc. No. 7-2.)

No. 7-2.)  Moreover, it does not appear the state appellate court docketed Brown's Notice of Appeal or assigned it a case number.  Neither Brown nor Respondent direct this Court's attention to any further appellate court filings relating to Brown's Notice of Appeal from the trial court's September 26, 2013 Order.[2]

### D.    Application to Reopen

On February 13, 2014, Brown filed a *pro se* Application to Re-open his Appeal pursuant to Ohio Rule of Appellate Procedure 26(B).  (Doc. No. 7-19.)  Therein, Brown identifies two assignments of error, as follows:

> I.    NONE INVESTIGATION PROCEDURE ARTICLE I § SECTION 10 NOTE 334.

> SUPPORTING FACTS: Effective counsel has no Investigation of pretrial claim as provided with 'person' affidavit to prove interview to sustain valid course other than preemptive or circumstantial.  Effective counsel has no statement that any property was in harm, damage, stolen or removed to give claim of R.C. § 2921.05(a) Retaliation.  The lack of affidavit suggest defense lack skills to afford

---

[2] Respondent states that she "could find no appeal case number assigned to [Brown's] appeal in a search of the online docket for the Summit County Clerk of Court for either the trial court docket or the court of appeals docket." (Doc. No. 7 at 9.)  She further maintains that Brown improperly filed his notice of appeal in the state appellate court, rather than the trial court, and that "this is why the appeals court apparently never docketed the appeal and no appeal case number was ever assigned to the notice of appeal."  (Doc. No. 7 at 9, fn. 4).  Although the caption of  Brown's Notice of Appeal references the state appellate court, the trial court docket reflects that it was, in fact, filed in the trial court. (Doc. No. 7-2.)  Respondent is correct, however, that Brown's Notice of Appeal does not appear on the state appellate court docket assigned to his direct appeal and, further, that a different appeal case number does not appear to have been assigned to Brown's Notice of Appeal from the trial court's September 26, 2013 Order. In his Petition, Brown states that he appealed the trial court's September 26, 2013 Order but that he "has not received docket number from the courts." (Doc. No. 1 at 4.)  He further states that "no brief submitted to date. However, the court(s) ruling is fradulent [sic]."  *Id*. at 5.  Brown does not direct this Court's attention to any evidence indicating he has taken any affirmative steps to perfect his appeal.

representation to the court a defense against allegations. Any public severant [sic], attorney, party official, or witness would allow a bias support of defense, 'none are available,' and retaliation is still not contested as mere hearsay of ¶ 701 Evidence procedure or statement of a person, ¶ 801 Evidence procedure of witness. With no affidavit by investigation of presecutional [sic] allegation and Support of Defense by Civil Procedure 16, 'Effective Counsel,' has proven no defense statigetium [sic] other than a compliance to be at required hearing.

## II.  LACK TO PROVIDE ADEQUATE DEFENSE AGAINST PRESUMPTION AND CIRCUMSTANTIAL RECORDS

SUPPORTING FACTS: Records of a person filing any statement or claim by warrant, affidavit, or ticket is unknown as to cause of retaliation by Appellant. Adequate effective assistance of counsel acquirement by notice for transmittal of records, from the municipal police, fire department, public safety manager, and city limit hospital will/would give cause for allegation to bind to county bind to the state court violation statue § 2921.05(A)(1) by such a magnitude that state law must prevail. Defense beyond misdemeanor arbitration of Municipal seems adequate for allegations is assure to have occurred. Filing by transmittal of record, motion to cause arbitration, with action for referral before municipal magistrate would show expertise as to defense against 'allegations,' effective counsel provides no defense to date.

Circumstantial by City records could be proven by proper proposal of law been instituted to revert State of Ohio intention in denial of Municipal law. The County of Summit admitted no law objection to circumstantial and presumptive to hear a magistrate or trial hearing for binding existed to stop a circumstantial trial. The use of defense would cause no trial as event proven on 'hearsay.' Effective counsel lacks skills to file for records of Claim.

(Doc. No. 7-19 at 2.)

On March 24, 2014, Brown's Application was denied. (Doc. No. 18-1.) Brown did not appeal this ruling.[3]

---

[3]  A search of the Ohio Supreme Court docket reveals that Brown has filed seven original actions in mandamus seeking records relating to the underlying state conviction at issue herein, as well as his 2008 conviction in Akron Municipal Court for disorderly conduct and menacing (*State v. Brown*, Akron Municipal Court Case No. 07CRB09495). All of Brown's petitions for writ of mandamus have been dismissed. *See* http://www.supremecourt.ohio.gov/Clerk. In November 2013, the Ohio Supreme Court declared Brown a vexatious litigator. *See State of Ohio ex rel. Michael E. Brown v.*

### E.     Re-Sentencing

On March 14, 2014, on remand from the state appellate court's November 20, 2013 direct appeal decision, the trial court merged Brown's resisting arrest, disorderly conduct, and aggravated menacing convictions (Counts II, III, and IV) into his retaliation conviction (Count I) for sentencing purposes.  (Doc. No. 7-28.)  The court then re-sentenced Brown to a definite term of two (2) years incarceration.  *Id.*  In addition, the trial court stated that "as part of the sentence in this case, the Defendant may be supervised on post-release control by the Adult Parole Authority for a discretionary period of up to 3 years after being released from prison, as determined by the Adult Parole Authority."[4]  *Id.*

Brown did not appeal his re-sentencing.[5]

### F.     Federal Habeas Petition

On December 30, 2013, Brown filed a *pro se* Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

---

*Akron Municipal Court Judge Annalisa Williams and Administrator of Records Glyniss Miller*, Ohio Supreme Court Case No. 2013-1480 (Order dated 11/20/13).

[4]  Brown was released on March 27, 2014 and is not under post-release control.  (Doc. No. 20.)  He filed his Petition on December 30, 2013, three months prior to his release date.  Because he was "in custody" when he filed his Petition, this Court has jurisdiction over the Petition.  *See Lawrence v. 48th Dist. Court*, 560 F.3d 475, 479 (6th Cir. 2009); *Steverson v. Summers,* 258 F.3d 520, 522 (6th Cir. 2001); *Michaels v. Hackel,* 491 Fed. Appx. 670, 671 (6th Cir. Aug. 8, 2012); *Wilson v. Straub*, 27 Fed. Appx. 454, 456 (6th Cir. Oct. 31, 2001).  Moreover, Respondent does not argue the Petition should be dismissed on the grounds that Brown is no longer incarcerated and is not subject to post-release control.

[5]  On March 21, 2014, Brown filed in the state trial court a *pro se* Motion/Petition for Relief from Wrongful Imprisonment pursuant to R.C. 2743.48(D) and (E)(1).  *See* http://www.cpclerk.co.summit.oh.us.  The trial court denied this motion on June 13, 2014.  *Id.*

-11-

GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL

SUPPORTING FACTS:   Attorney(s) conspired with actors that represent the State of Ohio to conceal and alter material evidence favorable to the defense, while material evidence was in control or possession of the State. (2) Trial counsel knowingly presented a [sic] altered video to the trial jury. (3) Trial counsel refused/failed to contact expert witness for the defense. (4) Trial counsel allowed for state key witnesses to change their account of events in question. (5) Attorney(s) conspired with an private entity to conceal material evidence. (6) Attorney(s) was representing conflicting interest that had a direct adverse effect on counsel's performance.

GROUND TWO: VIOLATION OF DUE PROCESS

SUPPORTING FACTS: Actors that represent the State of Ohio denied Applicant access to evidence.  The State of Ohio suppressed material evidence favorable to applicant, related to guilt and punishment.  The State of Ohio interfered with applicant's subpoena power to obtain information and compel expert witnesses.  Applicant also avers that actors that represent the State of Ohio and the attorney(s) of record violated 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986.

GROUND THREE: PROSECUTORIAL MISCONDUCT

SUPPORTING FACTS: Prosecutor employed improper methods calculated to produce a wrongful conviction.  Prosecutor used testimony that the State knew or should have known was false.  Prosecutor failed to correct known false testimony.  Prosecutor suppressed evidence.  Prosecutor obtained conviction by knowingly using false evidence.  Prosecutor made material misstatements of law to the jury.  Prosecutor failed to limit closing arguments to evidence admitted into the record.

(Doc. No. 1.)[6]

---

[6]  In addition to the instant habeas petition, Brown filed a civil action in this Court in August 2012 against Summit County Court of Common Pleas Judge Elinore Marsh Stormer; Akron Municipal Court Judge Annalisa Williams; Akron Municipal Court Administrator Glynnis Miller; Akron Police Officer Howard Vaughn; and attorneys Paul Adamson, Walter Madison, Job Perry, and Noah Munyer.  *See Brown v. Williams, et al.*, Case No. 5:12CV2180 (N.D. Ohio) (Gwin, J.)  This action raised claims under 42 U.S.C. § 1983 relating to Brown's conviction in the underlying state criminal case at issue herein.  On January 8, 2013, Judge Gwin dismissed Brown's complaint on the grounds his claims improperly challenged the validity of his conviction pursuant to *Heck v.*

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the

highest court in the state in which the petitioner was convicted has been given a full and fair

opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th

Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered

moot:  "If no remedy exists, and the substance of a claim has not been presented to the state

courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and

prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17

F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure

to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v.*

*Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may

procedurally default a claim by failing to comply with state procedural rules in presenting his

claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

---

*Humphrey*, 512 U.S. 477 (1994).  *Id.* at Doc. No. 22.  Six months later, Brown filed a
Motion for Declaratory Relief, in which he asked the Court to "author an injunction or an
declaratory decree to Summit County, Ohio (Ninth District) to protect the federal
substantial rights of this citizen."  *Id.* at Doc. No. 24.  Brown's motion was denied as
moot on July 24, 2013.  *Id.* at Doc. No. 25.

1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[7] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a

---

[7] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

-15-

Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

## IV. Analysis

### A.    Grounds One, Two and Three are Procedurally Defaulted

Respondent argues that each of Brown's three habeas grounds for relief are procedurally defaulted.  She maintains Brown failed to raise these grounds on direct appeal to the state appellate court; raised them for the first time in his December 2012 post-conviction petition; and, failed to timely appeal the trial court's denial of that petition.  Respondent asserts Ohio law prevents Brown from filing a delayed appeal from the denial of his post-conviction petition and,

therefore, his habeas claims are defaulted.  She further argues that, since Brown is unable to show cause or prejudice to excuse the default, his entire habeas Petition should be dismissed.

In his first ground for relief, Brown asserts his trial counsel[8] were ineffective because they (1) "conspired with actors that represent the State of Ohio to conceal and alter material evidence favorable to the defense;" (2) knowingly presented an altered video to the jury; (3) "refused/failed" to contact an expert witness for the defense; (4) allowed unidentified "state key witnesses to change their account of events in question;" (5) conspired with an unidentified private entity to conceal material evidence; and, (6) represented "a conflicting interest that had a direct adverse effect on counsel's performance." (Doc. No. 1.)  In his second ground for relief, Brown asserts due process violations based on the State's alleged suppression of material, exculpatory information and "interfer[ence] with [Brown's] subpoena power to obtain information and compel expert witnesses."  *Id.*  Finally, Brown's third ground for relief alleges prosecutorial misconduct based on the State's (1) use of testimony that it knew or should have known was false; (2) failure to correct "known false testimony;" (3) suppression of evidence; (4) "material misstatements of law to the jury;" and, (5) failure to limit closing arguments to evidence admitted into the record.  *Id.*

Respondent correctly notes Brown did not raise any of these grounds on direct appeal to the state appellate court and, further, did not appeal that court's November 2013 decision to the

_____

[8]  In his Petition, Brown explains he first retained "private attorney Walter T. Madison" but Mr. Madison withdrew after "display[ing] a conflicting interest by refusing to subpoena relevant evidence."  (Doc. No. 2 at 9.)  Brown states he then retained attorney Job E. Perry, but terminated his representation several months later.  *Id.*  The trial court then appointed attorney Noah Munyer.  *Id.*  at 10.  Mr. Munyer represented Brown at trial. (Doc. No. 7-6.)

-17-

Ohio Supreme Court.  Brown did generally raise these issues in his December 2012 *pro se*

Petition to Vacate or Set Aside Sentence.  (Doc. No. 7-20.)  On February 15, 2013, the trial court

determined Brown's petition was timely but denied it on the merits, finding Brown had "not

submitted evidentiary documents outside of the record demonstrating the merits of his claims of

prosecutorial misconduct and/or ineffective assistance of counsel." (Doc. No. 7-22.)  Brown did

not appeal the trial court's decision.  Rather, in July 2013, Brown filed two *pro se* Motions for

Relief from Judgment pursuant to Ohio Rule of Civil Procedure 60(b).  (Doc. Nos. 7-2 at 1; 7-

23.)  On September 26, 2013, the trial court construed Brown's motions as successive petitions

for post-conviction relief and denied them as both untimely and "subject to the doctrine *of res*

*judicata*."  (Doc. No. 7-26.)  The trial court docket indicates Brown filed a timely *pro se* Notice

of Appeal from this decision on October 8, 2013.  (Doc. No. 7-2.)  However, it does not appear

an appellate case number was assigned to this appeal or that briefing was ever ordered.  *See* Doc.

No. 1 at 4-5; Doc. No. 7 at 9.

The Court finds Brown's first, second and third grounds for relief are procedurally

defaulted.  Brown first raised these claims in his December 2012 post-conviction petition, which

was denied on the merits by the trial court.[9]  He failed to appeal the trial court's denial of this

petition, however, and may no longer do so as Ohio law does not permit delayed appeals in post-

---

[9] As noted above, Brown also filed Rule 26(B) Application.  However, this Application
did not directly assert the ineffective assistance of trial counsel, due process/*Brady*, or
prosecutorial misconduct claims presented in his habeas Petition.  Rather, that
Application asserted claims that Brown's appellate counsel was ineffective for failing to
raise certain claims on direct appeal.  It is well-established that claims of  ineffective
assistance of appellate counsel for failing to raise underlying claims on direct appeal, are
analytically distinct from the underlying claims themselves.  *See Davie v. Mitchell*, 547
F.3d 297, 312 (6ᵗʰ Cir. 2008).

-18-

conviction proceedings. *See State v. Nichols*, 11 Ohio St.3d 40, 43, 463 N.E.2d 375, 378 (1984) (holding that "a delayed appeal pursuant to App. R. 5(A) is not available in the appeal of a post-conviction relief determination"); *Nesser v. Wolfe*, 2010 WL 1141006 at * 4 (6th Cir. March 25, 2010) (observing that "Ohio does not permit delayed appeals in post-conviction proceedings"); *Alexander v. Coleman*, 2012 WL 3263116 at * 4 (N.D. Ohio Aug. 9, 2012) (same). Thus, Ohio law unequivocally prevents Brown from pursuing these claims via delayed appeal from the denial of his December 2012 post-conviction petition.

Moreover, while Brown attempted to revive these claims in his July 8, 2013 Motions for Relief from Judgment pursuant to Ohio Rule of Civ. Pr. 60(b), the trial court construed these motions as successive post-conviction petitions and denied them as both untimely and subject to *res judicata*. As such, the Court finds Brown failed to comply with an applicable state procedural rule and the state courts actually enforced the procedural bar, thus satisfying the first and second prongs of *Maupin*. Further, as to the third prong of *Maupin*, "the Sixth Circuit has stated that *res judicata* 'is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's claims.'" *Collins v. Warden, Ross Correctional Inst.*, 2014 WL 575727 at * 11 (N.D. Ohio Feb. 11, 2014) (quoting *Powers v. Bobby*, 2008 WL 4823134 (N.D.Ohio Nov. 3, 2008)). *See also Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Williams v. Bagley*, 380 F.3d 932, 966–67 (6th Cir. 2004); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001). Accordingly, the Court finds Brown's first, second, and third grounds for relief are procedurally defaulted and should be

dismissed on that basis, unless he can establish cause and prejudice to excuse the default.[10]

As noted above, "in order to establish cause, a habeas corpus petitioner must show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray*, 477 U.S. at 488). Brown first argues cause exists to excuse his default because he "is not an experienced litigator" and "had no knowledge . . . that an appeal was available to a denial of a post-conviction petition." (Doc. No. 13 at 7-8.) He also claims he elected not to present his claims to the state's highest court because he erroneously believed that doing so would "risk[] mooting [his] federal rights before he reaches the federal courts." (Doc. No. 1 at 5.) The Sixth Circuit has found that a petitioner's *pro se* status in the state courts and ignorance of the law is insufficient to establish cause. *Bonilla*, 370 F.3d at 498. *See also Tolliver v. Sheets*, 530 F.Supp.2d 957, 981 (S.D. Ohio 2009); *Arnold v. Warden, Lebanon Correctional Inst.*, 832 F.Supp.2d 853, 859 (S.D. Ohio 2011). Thus, Brown's *pro se* status and ignorance of Ohio's procedural rules cannot serve as cause to excuse the default of his habeas claims.

Brown next argues he was "purposely hindered from raising these very same claims on direct appeal" because his appellate counsel "intentionally failed to raise 'Dead Bang Winner' claims on Appeal constituting ineffective assistance of appellate counsel." (Doc. No. 13 at 11-

---

[10]  While Brown filed a timely notice of appeal from the trial court's denial of his successive post-conviction petitions, both parties acknowledge this appeal has not been docketed by the state appellate court. Although it is not clear why this occurred, the fact remains that there is currently no appeal pending from the trial court's judgment denying Brown's successive post-conviction petitions. Moreover, Brown does not appear to have taken any steps to perfect his appeal. Further, as noted above, Ohio law precludes Brown from now filing a delayed appeal from the trial court's denial of his successive post-onviction petitions.

12.)  Respondent does not address this issue, either in her Return or in a responsive pleading to Brown's Traverse.

The Court recognizes that ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional violation.  *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002).  However, in order to excuse a default, the ineffective assistance of counsel claim must not *itself* be procedurally defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).  Here, Brown filed a 26(B) Application in state appellate court, in which he asserted several instances of ineffective assistance of appellate counsel.  (Doc. No. 7-19.)  However, it does not appear Brown asserted ineffective assistance of appellate counsel based on counsel's failure to raise, on direct appeal, the claims asserted in Grounds One, Two and Three of his habeas Petition; i.e., ineffective assistance of trial counsel, due process, and prosecutorial misconduct.  Rather, Brown's 26(B) Application appears to assert appellate counsel was ineffective because he failed to interview various witnesses and conduct a full investigation into his case.[11]

Thus, the Court finds (1) the ineffective assistance of appellate counsel claims raised in Brown's 26(B) Application were not predicated on counsel's failure to raise on direct appeal the claims Brown now asserts in habeas; and, (2) it is highly unlikely the state courts would allow Brown to assert additional ineffective assistance of appellate counsel claims at this late stage of

---

[11] Brown's 26(B) Application is very difficult to understand, but it appears to argue that appellate counsel was deficient for failing to subpoena the Akron Safety Manager, the Akron Police and Fire Departments, and the "Hospital of Akron Ohio City Limits." (Doc. No. 7-19 at 1, 4.)  Brown also generally references appellate counsel's failure to interview witnesses, conduct an investigation, and subpoena various witnesses.  (Doc. No. 7-19.)

the litigation.  Accordingly, the Court finds Brown's claim that appellate counsel was ineffective for failing to raise the claims asserted in Grounds One, Two and Three of his habeas Petition is itself procedurally defaulted and, therefore, cannot serve as cause to excuse the default of his habeas claims.

Brown next argues the State's alleged suppression of material, exculpatory information "overcomes the states default defense and makes the proper showing of fundamental miscarriage of justice."  (Doc. No. 13 at 20.)  Brown does not clearly identify the evidence he believes has been suppressed.  In his Brief in Support of Petition, he states only that the State suppressed "surveillance footage of alleged incident, footage of arrest, trial transcript of prior directly related matter, etc."[12]  (Doc. No. 2 at 28.)  Moreover, he does not articulate how or why he believes this evidence would have affected the outcome of the proceedings below.  Respondent does not address this issue, either in her Return or in a responsive pleading to Brown's Traverse.

The Supreme Court has held that "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . would constitute cause" to excuse a procedural default.  *Murray*, 477 U.S. at 488.  *See also Amadeo v. Zant*, 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988); *Beuke v. Houk*, 537 F.3d 618, 634 (6th Cir. 2008); *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).  In *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), that Court applied this concept in the context of a procedurally defaulted *Brady* claim.  Therein, the Court determined Strickler had established cause for failing to raise

---

[12] The "trial transcript of prior directly related matter" appears to refer to the municipal court record regarding Brown's 2007 conviction for disorderly conduct and menacing. *See State v. Brown*, Akron Municipal Court Case No. 07CRB09495; *State v. Brown*, 2008 WL 2192817 (Ohio App. 9th Dist. May 28, 2008). That case also involved an incident between Brown and Akron Police Officer Howard Vaughn. *Id.*

-22-

his *Brady* claim prior to federal habeas proceedings because (1) the prosecution had withheld

exculpatory evidence; (2) Strickler reasonably relied on the prosecution's open file policy as

fulfilling the prosecution's duty to disclose such evidence; and, (3) the State confirmed

Strickler's reliance on the open file policy by asserting during state habeas proceedings that

petitioner had already received everything known to the government.  *Strickler*, 527 U.S. at 289.

The Sixth Circuit has also recognized that, under certain circumstances, habeas petitioners may

establish cause to excuse the default of a *Brady* claim where the factual basis of that claim was

reasonably unknown to defense counsel at the time of state court proceedings.  *See e.g., Jamison*,

291 F.3d at 388.  *See also Hill v. Mitchell*, 2012 WL 995280 at * 3-10 (S.D. Ohio March 23,

2012).

      As noted above, Brown does not clearly identify the material he alleges was suppressed

by the State, other than to refer generally to surveillance footage and the municipal court record

relating to his 2007 conviction in *State v. Brown*, Akron Municipal Court Case No.

07CRB09495.  Brown did not raise a *Brady* claim on direct appeal, but did appear to generally

raise such a claim in his December 2012 post-conviction petition.  (Doc. No. 7-20 at 5.)  In

exhibits attached to that petition, Brown acknowledged he had received surveillance footage

from the ACME parking lot as well as the municipal court record relating to Case No.

07CRB09495, but insisted that both of these materials had been altered by the State.  (Doc. No.

7-20 at 16-19.)  In its February 2013 Order denying Brown's petition, the state court did not

directly address Brown's *Brady* claim, but did find (in the context of discussing his ineffective

assistance and prosecutorial misconduct claims) that the "evidence does not in any way bolster

his assertions that the ACME store video (DVD) was tampered with, let alone that the State

and/or defense counsel tampered with the DVD." (Doc. No. 7-22 at 5.)  In his July 2013

successive post-conviction petition, Brown repeated, at length, his claim that the DVD had, in

fact, been altered by the State, citing a report from his purported expert Robert Sanderson.[13]

(Doc. No. 7-23.)  The trial court denied this petition as untimely and subject to *res judicata*.

(Doc. No. 7-26.)  Although Brown filed a timely notice of appeal in the trial court,  this appeal

does not appear to have been docketed by the state appellate court.

     For the following reasons, the Court finds Brown has not demonstrated cause to excuse

the default of his *Brady* claim (Ground Two).  In the Supreme Court and Sixth Circuit cases

cited above, cause was found to excuse a procedural default where the petitioners raised their

*Brady* claims for the first time in habeas proceedings based on evidence that was not available to

them during state court proceedings.  *See e.g. Strickler*, 527 U.S. at 278 (petitioner first

discovered *Brady* material where federal district court granted petitioner's counsel the right to

examine and copy all of the police and prosecution files in the case); *Jamison*, 291 F.3d at 384

(*Brady* material came to light during federal habeas proceedings).  Here, Brown raised his *Brady*

claim in state court, in both his December 2012 and July 2013 post-conviction petitions.  In both

instances, he articulated the basis for his belief that the video footage and municipal court record

had been altered and the "true" versions of this evidence had been suppressed.  In support of

---

[13]  According to documents attached to his first post-conviction petition, Robert
Sanderson was the President of Audio Video Forensic Lab, Inc. in Poughkeepsie, NY.
(Doc. No. 7-20 at 10-11.)  Brown apparently provided a copy of the surveillance footage
at issue to Mr. Sanderson for analysis.  In a letter to Brown dated February 13, 2012, Mr.
Sanderson indicates that one of the surveillance cameras "may have been omitted from
the list of cameras selected for export and the dvr system may provide the operator with
other quality related export options." *Id*. at 11.  Mr. Sanderson then suggested Brown
request certain information "to determine if we have been given the highest, best, and
most complete version of the video." *Id*.

these assertions, he attached the "expert report" of Mr. Sanderson and explained why he believed that report supported his claims.  The trial court denied both of his petitions, the first on the merits and the second on the basis of untimeliness and *res judicata*.  Brown failed to appeal the denial of his first post-conviction petition, and there is no record in the state appellate court of an appeal from the denial of his second post-conviction petition.

In light of the above, the Court finds Brown has not demonstrated that the factual or legal basis for his *Brady* claim was "reasonably unknown" to him during the course of his state court proceedings.  *See Murray*, 477 U.S. at 488; *Amadeo*, 486 U.S. at 222; *Beuke,* 537 F.3d  at 634; *Jamison*, 291 F.3d at 388.  Thus, Brown has not established cause to excuse the default of Ground Two of his Petition.

Brown next argues the Court should excuse his failure to fully exhaust his claims because he "made a continual good faith effort to assert his claims to the state courts and the state courts failed to protect the rights of petitioner." (Doc. No. 13 at 19.)  He notes the state appellate court did not issue its direct appeal decision until November 2013, leaving him only five months to challenge it before his expected release date of March 27, 2014.  *Id*. at 22.  Brown then claims that "[t]he dilatory by the state court to adjudicate applicant's direct criminal appeal was/is wholly attributable to the actors that represent the State of Ohio conspired conduct that has denied petitioner (Due Process of law) a fundamentally fair post-conviction process and equal protection of the law, and the unreasonable delay has caused a true risk of mooting this petitioner's federal rights before he can exhaust state exhaustion requirements as the state courts, including the highest state court, has given support to calculated wrongdoings of the trial court and the Summit County Prosecutor's Office, where the state courts, including the Ohio Supreme

-25-

Court, has arbitrarily capriciously put snarls and obstacles in gaining access to evidence that would allow petitioner to over a wholly obvious injustice." (Doc. No. 2 at 20.)

Once again, Respondent does not address this issue, either in her Return or in a responsive pleading to Brown's Traverse.

The Court construes Brown's Petition and Traverse as raising the argument that the state courts failed to provide an adequate and effective remedy to vindicate his federal rights and, therefore, he should not have been required to exhaust his habeas claims. Section 2254(b)(1) provides that a writ shall not be granted unless it appears that the applicant has exhausted his state court remedies, or (1) there is an absence of available State corrective process, or (2) circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1). The Sixth Circuit has held that "inordinate delay in adjudicating state court claims can be such a circumstance." *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992) (holding that petitioner's failure to exhaust state remedies should be excused where his petition for post-conviction relief had "languished in state court for more than three years"). *See also Turner v. Bagley*, 401 F.3d 718, 724-726 (6th Cir. 2005) (holding that failure to exhaust should be excused where the state appellate court "allowed Turner's appeal to remain on the docket for nearly eleven years without meaningful attention"); *Pollard v. Jones*, 1994 WL 385194 at * 3 (6th Cir. July 22, 1994) (excusing failure to exhaust where "no visible action has been taken when Pollard filed [his petition] in federal court, [] nearly a year had elapsed before the court appointed counsel for Pollard, and [] nearly five additional months elapsed before the appointed counsel contacted Pollard").

As an initial matter, the Court notes it has not found that Brown's claims are

unexhausted; but rather, that they are procedurally defaulted.  Nonetheless, the Court finds

Brown has not established there was such "inordinate delay" on the part of the state courts that it

excuses his failure to either appeal the state appellate court decision affirming his conviction, or

the state trial court's decision denying his first petition for post-conviction relief.  Brown was

convicted on April 3, 2012 and sentenced on May 17, 2012.  The state appellate court affirmed

his conviction and remanded for sentencing issues on November 20, 2013.  The Court does not

think a lapse of approximately one year and five months between sentencing and the state

appellate court direct appeal decision rises to the level of "inordinate delay."  Moreover, the

record indicates the state courts promptly adjudicated Brown's first and second post-conviction

petitions, as well as his 26(B) Application.  Brown filed his first post-conviction petition on

December 10, 2012, and it was denied two months later on February 15, 2013.  He filed his

second post-conviction petition on July 8, 2013, and it was denied less than three months later on

September 26, 2013.  Lastly, Brown filed his 26(B) Application on February 13, 2014, and it

was denied on March 24, 2014.   In light of the above, the Court finds there is absolutely no

indication of undue delay by the state courts, either at the trial or appellate level.

Citing his seven mandamus actions in the Ohio Supreme Court, Brown then argues that

the state court corrective process is "inadequate/ineffective where the state court(s) including the

states highest court has imparted themselves to the suppression of discoverable evidence in this

instant matter." (Doc. No. 13 at 23.)  The Court rejects this argument.  In his mandamus actions,

Brown asked the Ohio Supreme Court to order the production of (among other things) various

state court records relating to the recusal of the judges in both Akron Municipal Court Case No.

07CRB09495 and Summit County Common Pleas Case No. CR-11-03-0741; "verbatim" copies

of the municipal court record relating to Case No. 07CRB09495; and, documents and evidence in the possession of the Summit County Prosecutor's Office relating to Case No. CR-11-03-0741, including video surveillance footage from the ACME parking lot and original police cruiser footage of his arrest. In each of Brown's mandamus actions, the State of Ohio filed motions to dismiss. The fact that the Ohio Supreme Court granted these motions does not, in and of itself, demonstrate an inadequate or ineffective state court process. Similarly, the fact that Brown's arguments that the surveillance footage and municipal court record provided by the prosecutor was altered or tampered with have been rejected by the state courts, does not, standing alone, demonstrate an inadequate or ineffective mechanism for exhaustion of his state court remedies.

Accordingly, and for all the reasons set forth above, Brown's argument that the state courts failed to provide an adequate and effective process for vindicating his federal rights is without merit.

Finally, Brown argues his default should be excused because he is actually innocent. (Doc. No. 13 at 23.) A petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. However, conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324. While Brown repeatedly asserts he is innocent, he has failed to support this allegation with any evidence, much less new, reliable evidence that was not presented at trial. Brown's default cannot be excused on this basis.

Accordingly, and for all the reasons set forth above, it is recommended that each of Brown's habeas claims be dismissed as procedurally defaulted.

### B. Motions to Amend Relief, Expand the Record, Order Injunctive Relief, and for Evidentiary Hearing (Doc. Nos. 8, 9, 12, 14, 15)

Brown has also filed the following motions: (1) Motion to Amend Relief (Doc. No. 8); (2) Motion for Transmittal of Records from Summit County Common Pleas Case No. CR-2011003-0741 (Doc. No. 9); (3) Motion for Order of Injunctive Relief for Cause (Doc. No. 12); (4) Motion for Expansion of the Record (Doc. No. 14); and, (5) Motion for Evidentiary Hearing (Doc. No. 15.)

In his Motion to Amend Relief, Brown asks the Court to allow him to amend the relief sought in his Petition in light of the fact that he was scheduled to be released from prison on March 27, 2014 and no post-release control or parole has been imposed.  (Doc. No. 8.) Specifically, Brown requests that his "grounds of relief be amended to include as follows: (1) For the United States District Court for the Northern District of Ohio to Adjudicate Habeas Corpus Matter 5:13cv2842 on its merit; (2) to expunge (erase or destroy) this wrongful conviction; and, (3) adjudge for Petitioner to be wrongfully imprisoned." (Doc. No. 8 at 2.)  In light of the fact that this Court has recommended Brown's Petition be dismissed as procedurally defaulted, the Court finds Brown's Motion to Amend Relief is denied as moot.[14]

In his Motions for Transmittal of Records (Doc. No. 9) and Expansion of the Record

---

[14]As noted above, Brown was released on March 27, 2014 and is not under post-release control.  (Doc. No. 20.)  Brown filed his Petition on December 30, 2013, three months prior to his release date.  Because Brown was "in custody" when he filed his Petition on December 30, 2013, this Court has jurisdiction over the Petition. *Wilson,* 27 Fed. Appx. at 456.

-29-

(Doc. No. 14), Brown asks the Court to order Respondent to produce and to expand the habeas record to include the following documents: (1) the trial record in Summit County Court of Common Pleas Case No. CR-2011-03-0741; (2) state court records regarding the recusal of Judges Stormer and Callahan in Case No. CR-2011-03-0741; (3) the "captured electronic surveillance video from the Acme Corporation on 3-19-2011," (4) the "captured dash camera video of arrest and restraint" in Case No. CR-2011-03-0741; (5) the trial record in Akron Municipal Court Case No. 07-CRB-09495; (6) all state court filings relating to his mandamus actions in the Ohio Supreme Court; (7) any and all motions filed by Brown in the state trial and appellate courts; (8) any and all filings submitted by Brown to the Ohio Disciplinary Counsel and responses thereto; (9) any and all complaints made by Brown to the Summit County Prosecutor's Office; and, (10) any and all writings by Brown to the Ohio Attorney General's Office and responses thereto.

In his Motion for Order of Injunctive Relief for Cause (Doc. No. 12), Brown asks the Court to (1) stay the instant matter to allow for Respondent to "produce true and real copies of the trial transcript and re-sentencing transcription verbatim in regard to the instant matter, (free of any and omissions);" and, (2) order the state court to "produce the reasons for recusal" by state court judges Stormer and Callahan.

The Court finds the state court record provided by Respondent is sufficient to resolve Brown's Petition.  Accordingly, Brown's Motions for Transmittal of Records (Doc. No. 9) for Expansion of the Record (Doc. No. 14); and for Order of Injunctive Relief (Doc. No. 12) are denied.

Finally, Brown requests the Court conduct an evidentiary hearing.  (Doc. No. 15.)  He

asserts he "is not at fault for the failure to develop the facts in state court, for the cause was beyond the control of this particular petitioner and the instant matter presents improperly suppressed and misrepresented evidence by the (State) prosecution that was material . . . [and] petitioners counsel(s) clearly failed to function as counsel as the 6th Amendment guaranteed petitioner by the standards set by *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2-52, 80 L.Ed. 2d 674 (1984) . . . , resulting in factual claims not previously being subject to full and fair hearing in state court." (Doc. No. 15 at 1.)  Brown then provides seventeen reasons why he should be granted a hearing, including the alleged incompleteness/inaccuracy of the state court record; his counsel's ineffectiveness; the state's suppression of material evidence and failure to comply with subpoena demands; and, misconduct and/or bias by the state trial court judges. (Doc. No. 15-1 at 3-6.)  He also claims a hearing will enable him to demonstrate cause, prejudice, and a miscarriage of justice, in order to excuse his procedural default.  *Id.* at 6.

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing."  *Stanford v. Parker*, 266 F.3d 442, 459–460 (6th Cir. 2001) (citing *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994) (citation and internal quotation omitted)).  However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit.  *Id.*

Upon careful review, the Court determines the issues presented can be resolved from the record provided by Respondent.  Moreover, the Court expressly finds a hearing is not necessary on the issue of cause and prejudice to excuse Brown's procedural default.  The state court record is sufficient to resolve these issues. An evidentiary hearing is, therefore, not required and

Brown's Motion (Doc. No. 15) is denied.

## V.  Conclusion

For the foregoing reasons, it is recommended that Brown's Petition be DISMISSED.

/s/ Greg White_____
U.S. MAGISTRATE JUDGE

Date: July 14, 2014

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**